**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Ronald Kensington TIXIER, Defendant–Appellant.**

No. 06CA1534.

Colorado Court of Appeals, Div. II.

Oct. 16, 2008.

John W. Suthers, Attorney General, Alexander C. Reinhardt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Pamela A. Dayton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CARPARELLI.

Pursuant to a plea agreement, defendant, Ronald Kensington Tixier, pled guilty to sexual assault on a child by one in a position of trust and received a stipulated sentence of two years to life in the Department of Corrections. Defendant contends that the trial court misinterpreted section 18–3–414.5(1), C.R.S.2008, and, as a result, erred when it ruled that he is a sexually violent predator. We affirm.

Defendant was convicted of sexually assaulting his adolescent stepdaughter. His conviction requires that he register as a sex offender, reregister annually, and keep his registration current. §§ 16–22–103(1)(a), 16–22–108(1) & (3), 18–3–405.3, 18–3–411(1), C.R.S.2008. Because the court ruled that he is a sexually violent predator, defendant must also remain registered for the remainder of his life and reregister every ninety days, and he is subject to warrantless arrest if a peace officer determines that there is probable cause to believe he has not registered. In addition, defendant's name, address, and physical description are included on a list of sexually violent predators that is available through the state website. § 18–3–412.5(6)(a)–(b), C.R.S.2008.

## I. Sexually Violent Predator

In accordance with section 18–3–414.5(1)(a)(III), C.R.S.2008, whether a sex offender is a "sexually violent predator" depends on, among other things, whether the victim

- was a stranger to the offender, or
- was a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization.

Here, the prosecution asserted that defendant "promoted a relationship" with his stepdaughter primarily for the purpose of sexual victimization.

Section 18–3–414.5(1)(a)(IV), C.R.S.2008, directs the division of criminal justice in consultation with and the approval of the sex offender management board established pursuant to section 16–11.7–103(1), C.R.S.2008, to develop a risk assessment screening instrument (RASI) for sexually violent predators. Subsection (IV) also states that a sexually violent predator is one who, based on the results of a RASI "is likely to subsequently commit one or more of the offenses specified" in the statute.

In section 18–3–414.5(2), C.R.S.2008, the General Assembly directs the probation department to complete a sexually violent predator risk assessment. It also directs that, *based on the results of the RASI,* the court must make specific findings of fact and enter an order stating whether the defendant is a sexually violent predator.

## II. Statutory Interpretation

When interpreting a statute, our primary duty is to give effect to the intent of the legislature. We look first to the plain language of the statute before invoking alternative canons of statutory construction. *People v. Banks,* 9 P.3d 1125, 1128 (Colo.2000). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997); *see also Klinger v. Adams County Sch. Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006). We read the statute as a whole "to give 'consistent, harmonious and sensible effect to all of its parts,'" in accordance with the presumption that the legislature intended the entire statute to be effective. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005) (quoting *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1192 (Colo. 2004)). "A statutory interpretation leading to an illogical or absurd result will not be followed." *Frazier v. People,* 90 P.3d 807, 811 (Colo.2004). We avoid constructions that are at odds with the legislative scheme. *Klinger,* 130 P.3d at 1031.

If a statute is ambiguous, we may look to other factors to determine legislative intent, such as the legislative declaration or purpose, the object sought to be attained, and the consequences of a particular construction. § 2–4–203, C.R.S.2008; *Colo. Dep't of Labor & Employment v. Esser,* 30 P.3d 189, 195 (Colo.2001). An act's declaration of policy is often "[o]ne of the best guides." *Common Sense Alliance v. Davidson,* 995 P.2d 748, 755 (Colo.2000).

## III. Definition of Sexually Violent Predator

It is not difficult to understand how section 18–3–414.5(1)(a)(III) applies when the victim is a stranger to the sex offender. Nor is it difficult to understand how it applies when, prior to an assault, an offender establishes a relationship with a stranger or an acquaintance with whom the offender has no definable relationship and does so primarily for the purpose of sexual victimization. The common element in these circumstances is evident: the predatory offender sought and found a victim from individuals with whom he or she did not have any definable relationship.

It is a bit more difficult to understand how the statutory definition applies when the offender "promoted a relationship [with the victim] primarily for the purpose of sexual victimization." § 18–3–414.5(1)(a)(III). The verb "to promote" can be defined in many ways. However, we conclude the most applicable and appropriate definitions in the context here are "to encourage" and "to enlarge." *Webster's Third New International Dictionary* 1815 (1986).

If the word "promoted" is understood to mean "encouraged," the provision would certainly apply in circumstances in which the offender encouraged the establishment of a relationship, but did not succeed in doing so. Thus, if the court found that the victim was neither a stranger to the offender nor one with whom the offender had a relationship,

but found that the offender attempted to establish a relationship primarily for the purpose of sexual victimization, it could conclude that the offender was a sexually violent predator. With this interpretation, a sexually violent predator is one who (1) sexually assaults a stranger; (2) interacts with a victim and, primarily for the purpose of sexual victimization, attempts but fails to establish a relationship with the victim; or (3) successfully establishes a relationship with the victim primarily for the purpose of sexual victimization.

▬ In addition, the word "promoted" can be understood to refer to circumstances in which the offender and the victim had a relationship that was limited in its nature, purpose, and customary time and place of interaction, but the offender encouraged the victim to enlarge the relationship beyond its limited scope primarily for the purpose of sexual victimization. In this regard, it would be sufficient if the offender, primarily for the purpose of sexual victimization, encouraged the victim to be with him or her more often and away from the usual place of their limited relationship, and if the offender encouraged the victim to participate in activities not otherwise included in the limited relationship, so long as the court found that the offender did so primarily for the purpose of sexual victimization. Obvious examples would include teachers, coaches, or clergy who have a limited relationship with a victim and attempt to lure the victim into a broader relationship primarily for the purpose of sexual victimization. *See, e.g.,* Wash. Rev.Code § 9.94A.030(39) (2008) (defining predator to include teachers, counselors, coaches, trainers, pastors, elders, volunteers, or others in positions of authority in a school, recreational activity, church, or religious organization who sexually victimize a person under his or her authority or supervision).

In addition to these, we conclude that, although relationships between and activities shared by parents and children and stepparents and stepchildren vary, a prosecutor may seek to prove, and a jury could find, that an offender encouraged his or her child or stepchild to expand their relationship beyond the nature and purpose of such a familial relationship and that the offender did so primarily for the purpose of sexually victimizing the child.

Hence, we conclude that the phrase "promoted a relationship" includes failed attempts to establish a relationship with a victim, as well as efforts to encourage a victim with whom the offender has a limited relationship to enter into a broader relationship, primarily for the purpose of sexual victimization.

## IV. Evidence

Here, defendant pled guilty to sexually assaulting his stepdaughter and waived the establishment of a factual basis. Although the victim did not testify, the prosecution submitted the sex offense specific mental health evaluation (MHE), which provided a case summary based on sheriff's department records of the victim's statements. The prosecution also submitted the RASI, which reported that defendant

- promoted the relationship with his stepdaughter for the purposes of sexual victimization;
- engaged in a pattern of conduct to isolate the victim in his room and utilized that area to promote his sexual contact with her;
- took steps to change the focus of the relationship with his stepdaughter to facilitate the commission of a sexual assault by, among other things, planning to increase the frequency of their contact, introducing inappropriate sexual contact, stalking, or seduction; and
- engaged in conduct that was progressively more sexually intrusive.

The RASI stated that the probation department had concluded that defendant is a sexually violent predator.

## V. Trial Court's Findings of Fact

▬ After noting the conclusions in the RASI and the probation department's conclusion that defendant presents a high risk for community safety, the trial court found that "clearly we have conduct, as the probation department has articulated, that was progressively more sexually intrusive."

Based on the results of the RASI, the court concluded that the records submitted to the court established that defendant was a sexually violent predator.

Defendant argues that, based on *People v. Stead*, 66 P.3d 117, 120 (Colo.App.2002), the trial court's finding that a defendant meets the criteria of a sexually violent predator is reviewed for abuse of discretion. We disagree.

Although the division in *Stead* applied an abuse of discretion standard to the trial court's determination that the defendant was a sexually violent predator, the standard of review does not appear to have been at issue in that case and the opinion provides no discussion of the basis for applying that standard. Rather, after applying that standard, the division cited *People v. Owens*, 969 P.2d 704 (Colo.1999), using the signal "*see*," indicating that its use of the abuse of discretion standard was not directly supported by *Owens*, but followed from it.

The issue in *Owens* was whether the trial court had erred when it granted a motion to suppress the defendant's statement. In its review of the trial court's ruling, the supreme court stated, "The trial court's findings of historical fact are entitled to deference by appellate courts and will only be overturned if they are not supported by competent evidence...." *Owens*, 969 P.2d at 707. Thus, in *Owens*, the court applied the clear error standard applicable to findings of fact, not the abuse of discretion standard applicable to discretionary rulings.

We conclude that as explicitly permitted by the statute, the trial court properly relied on the RASI as evidence and that the evidence supports the court's findings regarding defendant's conduct, intentions, and risk to community safety. Accordingly, we conclude that the trial court's findings are not clearly erroneous.

## VI. Trial Court's Conclusions of Law

The meaning of section 18–3–414.5(1)(a)(III) is a question of law we review de novo. *Hendricks v. People*, 10 P.3d 1231, 1235 (Colo.2000). Accordingly, we review de novo the question of whether the court's factual findings are sufficient to support its legal conclusion that defendant is a sexually violent predator within the meaning of the statute.

Here, the trial court found, with record support, that defendant engaged in a pattern of conduct to expand the nature and place of his relationship with the victim beyond that of their familial relationship. We conclude that this finding supports the court's conclusion that defendant is a sexually violent predator within the meaning of the statute, and we will not disturb it.

Accordingly, the sentence is affirmed.

Judge ROTHENBERG and Judge BERNARD concur.