The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Carlos Anthony GALLEGOS, Defendant–Appellant.

No. 07CA2373.

Colorado Court of Appeals, Div. I.

Sept. 17, 2009.

Rehearing Denied Dec. 3, 2009.

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Leslie A. Goldstein, L.L.C., Leslie A. Goldstein, Steamboat Springs, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Carlos Anthony Gallegos, appeals only the district court's finding at sentencing that he is a sexually violent predator (SVP). Because the facts in the record do not support the court's finding that Gallegos "established" the relationship with the victim primarily for the purpose of sexual victimization, we reverse and remand for correction of the mittimus.

Gallegos pleaded guilty to attempted sexual assault on a child based on an incident during which he touched the vaginal area of his live-in girlfriend's daughter (victim) while bathing her. At sentencing, based on the results of the SVP assessment screening instrument, the court found Gallegos to be an SVP because he established the relationship with the victim primarily for purposes of sexual victimization, and that designation was noted on the mittimus. This appeal followed.

Gallegos contends that the trial court erred in finding that he met the criteria of an SVP under section 18–3–414.5, C.R.S.2008. We agree.

## I. Law

As pertinent here, pursuant to section 18–3–414.5(1)(a), C.R.S.2008, an SVP is an offender (1) who is eighteen years of age or older as of the date the offense is committed; (2) who has been convicted on or after July 1, 1999, of one of several enumerated offenses, including sexual assault on a child, or of an

attempt, solicitation, or conspiracy to commit any one of those offenses; (3) whose victim was a stranger to the offender or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) who is likely, based upon the results of a risk assessment screening instrument, subsequently to commit another of the listed offenses under the same or similar circumstances. *See People v. Rowland,* 207 P.3d 890, 892–93 (Colo.App.2009).

The statute requires the probation department, in coordination with an evaluator, to complete the SVP assessment screening instrument and make a recommendation regarding whether a defendant meets the SVP criteria. Then, using the results of the screening instrument, the district court must make specific findings of fact and enter an order as to whether the offender is an SVP. § 18–3–414.5(2), C.R.S.2008; *see People v. Tixier,* 207 P.3d 844, 847 (Colo.App.2008).

Here, Gallegos was over eighteen when he committed the offense and his conviction was for an offense listed in section 18–3–414.5(1)(a)(II). As to the third criterion, which addresses the offender's relationship with the victim, it is undisputed that Gallegos and the victim were not strangers. Thus, his classification as an SVP depends on whether he established or promoted a relationship with the victim for the primary purpose of sexual victimization. *See* § 18–3–414.5(1)(a)(III); *Tixier,* 207 P.3d at 846. Because both the court and the evaluator classified Gallegos as an SVP based on a finding that he *established* the relationship with the victim primarily for the purpose of sexual victimization, we address only that prong of the SVP definition.

When construing a statute, our primary purpose is to ascertain and effectuate the intent of the General Assembly. *People v. Weiss,* 133 P.3d 1180, 1184 (Colo.2006). We look first to the plain and ordinary meaning of the statutory language to determine legislative intent, and if the statutory language is clear and unambiguous, we apply the provision as written. *Turbyne v. People,* 151 P.3d 563, 567 (Colo.2007). In so doing, we look to the language of the statute and

give the words and phrases used their common meanings, and give effect to every word so as not to render any terms superfluous. *See People v. Madden,* 111 P.3d 452, 458 (Colo.2005).

Because the legislature chose to include in its description of relationships with the victim instances where the offender either "established" or "promoted" the relationship, those phrases must be accorded different meanings to give effect to each word and avoid redundancy. *See id.; People v. Guenther,* 740 P.2d 971, 976 (Colo.1987) (it is presumed that the legislature understands the import of the words it uses and is deliberate in its choice of language).

The commonly accepted definition of "establish," when used as a verb, is "to bring into existence, create, make, start, originate, or found." *Webster's Third New International Dictionary* 778 (2002).

In addition, we note that, in *Tixier,* a division of this court, interpreting the "promoted a relationship" criterion of section 18–3–414.5(1)(a)(III), stated that "establishing a relationship" under the statute occurs "when, prior to an assault, an offender establishes a relationship with a stranger or an acquaintance with whom the offender has no definable relationship and does so primarily for the purpose of sexual victimization." *Tixier,* 207 P.3d at 847. The division also recognized that the common element of both the "stranger" and "established a relationship" criteria is that the "predatory offender sought and found a victim from individuals with whom he or she did not have any definable relationship." *Id.*

Based on the foregoing, we conclude that only if an offender creates or starts a relationship primarily for the purpose of sexual victimization can he or she meet the statutory criterion of "establishing a relationship" for that purpose. *See Hernandez v. People,* 176 P.3d 746, 751 (Colo. 2008) (we interpret a statute according to its plain meaning). In other words, "established a relationship" applies when an offender, from the outset, seeks out a victim from individuals with whom he or she has no definable relationship, and sexual victimiza-

tion is the primary purpose of the relationship. Accordingly, it follows that where an offender already has a relationship with the victim independent of the sexual victimization, the offender cannot be considered to have established the relationship for that purpose.

## II. Facts

The trial court, at sentencing, made the following findings of fact: (1) Gallegos was twenty-four years old and the victim was five or six years old at the time of the assault; (2) the victim was not defendant's natural child; (3) Gallegos and the victim had an established relationship because the victim was the child of Gallegos's girlfriend; and (4) based on the age difference, there was no logical reason for Gallegos's relationship with the victim other than for the purpose of victimization.

In addition, the following facts appear in the record: (1) Gallegos met the victim after he began dating the victim's mother; (2) Gallegos lived in the same household with the victim, the victim's mother, and the child he shared with the victim's mother for approximately two and a half to three years; (3) the living arrangements indicate that Gallegos and the victim had a relationship akin to a stepparent-stepchild; and (4) although Gallegos and the victim's mother were not married, he believed that the victim looked to him as a father figure.

## III. SVP Findings

The SVP assessment screening instrument mirrors the statute by classifying the offender's relationship with the victim into the three separate categories of "stranger," "established a relationship," and "promoted a relationship." With regard to the "established a relationship" prong, the screening instrument directs the evaluator to conclude that the offender fits that category if any two of the four following criteria apply: (1) the offender has a history of multiple victims and similar behavior; (2) the offender has actively manipulated the environment to gain access to this victim; (3) the offender introduced sexual content into the relationship; and (4) the offender persisted in the intro-

duction of sexual contact or inappropriate behavior of a sexual nature despite lack of consent or the absence of the ability to consent. Here, because the evaluator found that Gallegos fit both the first and fourth criteria, she concluded that he had established the relationship with the victim primarily for purposes of sexual victimization.

Because Gallegos contested the findings of the evaluator, the court held a separate hearing on the SVP classification. At the sentencing hearing that followed, the court made the following findings:

> The Court in sentencing the Defendant and in making its further finding recognizes that the Court must then determine whether ... the Defendant established a relationship primarily with the victim for the purpose of sexual victimization.... *That this was, in fact, an established relationship and it was a relationship,· the child was the child of his girlfriend in this particular case and so there was, in fact, an established relationship.* The statute differentiates ... between a relationship that is promoted, in other words, a relationship that's promoted primarily for the purpose of sexual victimization from one that is simply established, a relationship primarily for the purpose of the sexual victimization. *And by that the context in which the Court reads that is that there is no other legitimate relationship context here. This is not his natural child. This is a five-year-old child and a 24–year-old man. And in this context there would be no other logical relationship that could be inferred other than for the purpose of victimization. And so the Court will make that specific finding toward a sexually violent predator.*

(Emphasis added.)

## IV. Analysis

■■■ A determination of whether a defendant is an SVP involves a mixed question of law and fact. *See People v. Cook,* 197 P.3d 269, 280 (Colo.App.2008). We give deference to a trial court's findings of fact and review them only for clear error, while we review de novo the question of whether the court's findings are sufficient to support its legal

886

conclusion that a defendant is an SVP. *Id.;* *Tixier*, 207 P.3d at 849.

■ We begin our analysis by noting that the district court found that Gallegos and the victim had "an established relationship" because the victim was the child of Gallegos's girlfriend, and that finding is supported by the record. Then, having made that finding, the court concluded that Gallegos established the relationship primarily for purposes of victimization because there was no other logical reason for the relationship other than victimization.

We note two problems with these conclusions. First, as discussed above, the "established a relationship" criterion applies only when an offender begins a relationship primarily for purposes of sexual victimization. Thus, because the court used its finding that Gallegos and the victim had an established relationship to satisfy that criterion, it misapprehended the statute, and erred by applying the wrong legal standard to its analysis.

Second, the facts in the record do not support the court's finding that there was no logical reason for the relationship other than sexual victimization.

- Gallegos and the victim had an established relationship before the sexual contact.
- There was some sort of familial relationship between Gallegos and the victim at the time of the assault by virtue of the living arrangements and by virtue of his being the father of her half-sister.
- There is no evidence in the record to suggest that Gallegos sought out the victim and, from the outset, began the relationship with the victim primarily for the purpose of sexual victimization. *See Tixier*, 207 P.3d at 847.

Therefore, because the court's finding that there was no logical reason for the relationship is clearly erroneous, the court erred in concluding that Gallegos established his relationship with the victim primarily for purposes of sexual victimization.

The People, nevertheless, argue that the SVP designation is appropriate. Specifically, they argue that the evidence supports the evaluator's and the court's findings that

Gallegos had a history of multiple victims and similar behavior, and persisted in the introduction of sexual contact or inappropriate behavior of a sexual nature despite a lack of consent or the absence of the ability to consent, conduct which meets the first and fourth criteria on the "established a relationship" section of the SVP screening instrument. We disagree because (1) those findings on the SVP screening instrument concern whether the "primary purpose was sexual victimization," not whether the relationship was "established"; and (2) regardless of whether the evidence supports those findings, as discussed above, the "established a relationship" criterion of the statute cannot be satisfied when the offender and victim already have a relationship without the sexual victimization.

In addition, we note that the evaluator who completed the SVP screening instrument concluded that Gallegos was not a stranger and had not promoted the relationship with the victim primarily for the purpose of sexual victimization. Further, the People do not argue that he fits either of those categories. Accordingly, while we note that it is undisputed that Gallegos and the victim were not strangers, we express no opinion as to whether Gallegos might fit the definition of an SVP under the "promoted a relationship" criterion. However, because the People do not contend that this criterion applies here, we conclude that the trial court's SVP designation should be reversed, rather than the case being remanded for further proceedings on this issue.

Because the court erred in finding that Gallegos established the relationship with the victim primarily for the purpose of sexual victimization, that part of Gallegos's sentence concluding he is an SVP is reversed, and the case is remanded to the trial court to remove the SVP designation from Gallegos's mittimus.

Judge ROY and Judge GABRIEL concur.